IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-523-FL

| | | |
|---|---|---|
| ELIZABETH MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTH CAROLINA STATE UNIVERSITY; JULIE CASANI, in her individual and official capacity; LEAH ARNETT, in her individual and official capacity; and JANE DOE, in her individual and official capacity, | ) ) ) ) ) ) ) ) | ORDER |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss for lack of subject matter and personal jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) and failure to state a claim under Rule 12(b)(6). (DE 15). The motion has been fully briefed, and the issues raised are ripe for decision. For the reasons that follow, the court grants defendants' motion.

**STATEMENT OF THE CASE**

Plaintiff initiated this action by complaint filed September 28, 2018, in the General Court of Justice, Superior Court Division of Wake County. Plaintiff brings a myriad of claims all arising out of her termination from employment as a staff physician at student health services at North Carolina State University ("NCSU").

Defendants removed the action to this court on November 1, 2018, and filed instant motion to dismiss on December 7, 2018. Defendants argue that plaintiff's claims for wrongful termination and blacklisting as against defendant NCSU and individual defendants in their official capacities are

barred by the doctrine of sovereign immunity; plaintiff's claim against individual defendants in their individual capacities are barred by the doctrine of public officer's immunity; and that all of plaintiff's claims fail to state a claim. The court has stayed the parties scheduling activities pending resolution of the instant motion.

## STATEMENT OF THE FACTS

The facts alleged in complaint as relevant to the resolution of the instant motion are as follows. Plaintiff is a former staff physician at student health services at NCSU. (Compl. (DE 1-1) ¶ 15). She held this position from approximately October 1, 2008 to approximately October 2, 2017. (Id. ¶¶ 15, 21). Throughout her employment, plaintiff met or exceeded the reasonable work expectations of defendants. (Id. ¶ 17).

In August 2016, plaintiff wrote to defendant Leah Arnett ("Arnett"), raising concerns about deficiencies in one of the medical record software programs used at student health services. (Id. ¶ 18). Plaintiff alleges she told defendant Arnett, the former director of student health services, and others, that errors in this software program prevented NCSU from reporting student immunization compliance in a timely manner as required by North Carolina law. (Id. ¶¶ 5, 18-19). In December 2016, plaintiff brought her concerns about the software program to non-party Dr. Lisa Zapata ("Zapata"). (Id. ¶ 19).

Plaintiff alleges defendant Arnett "and others in her supervisory chain of command developed animosity toward Plaintiff" because she reported her concerns. (Id. ¶ 20). Plaintiff alleges her immediate supervisor, defendant Julie Casani ("Casani"), former director of student health services, separated her employment in October 2017. (Id. ¶¶ 4, 13, 21). Plaintiff also alleges that following her termination, defendant Jane Doe "contacted UNC Health Care and provided false

2

and unfavorable reference which prevent Plaintiff Miller from being hired by UNC." (Id. ¶¶ 6, 82).

## DISCUSSION

A.      Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

Rule 12(b)(2) allows for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993)( "[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.     Analysis

Plaintiff's first claim under North Carolina's Whistleblower Act, N. C. Gen. Stat. § 126-85, and second claim for wrongful termination in violation of North Carolina's public policy, are directed against defendants NCSU, and Arnett, and Casani. The first claim asserts liability in Arnett and Casani's individual and official capacities, while the second claim is predicated only on their official capacity. Defendants Arnett and Casani, sued in their individual capacities, are the subject of her third claim for relief, tortious interference with contract. In plaintiff's fourth claim for relief, she asserts a cause of action for damages under North Carolina's constitution against defendants NCSU and Casani, in both her individual and official capacities, pursuant to Corum v. Univ. of N.C., 330 N.C. 761, 782 (1992). Her fifth claim, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 et seq., and sixth claim, for blacklisting in contravention of North Carolina General Statute § 14-355, are directed against defendants NCSU and Arnett, in her individual and official capacities. Plaintiff additionally asserts a blacklisting claim against defendant Jane Doe, in her individual and official capacities.[1]

The court will first address the applicability of sovereign immunity and public officer's

---

[1] Plaintiff, in introduction to complaint, states she brings a claim for defamation, but such claim is not addressed thereafter.

4

immunity to certain of plaintiff's claims. The court will then turn to each of plaintiff's individual claims.

1. Sovereign Immunity[2]

The doctrine of sovereign immunity protects the state from suit unless it has expressly consented. Guthrie v. N.C. State Ports Author., 307 N.C. 522, 535 (1983). "It has long been established that an action cannot be maintained against the State of North Carolina or an agency thereof unless it consents to be sued or upon its waiver of immunity, and that this immunity is absolute and unqualified." Id. at 534 (emphasis original).

The North Carolina General Assembly determines under what circumstances one may sue the State. Id. Through the Torts Claims Act, the State of North Carolina has partially waived its immunity with respect to the negligence of state employees acting within the scope of their employment. N.C. Gen. Stat. § 143-291; see also Teachy v. Coble Dairies, Inc., 306 N.C. 324, 329 (1982). The aggrieved party must bring such claims before the North Carolina Industrial Commission for initial decision, rather than the state courts. Id.[3]

In some instances, the legislature has dictated that a government entity's purchase of liability insurance waives the defense of immunity. For example, a county waives its immunity to suit by purchasing liability insurance. See N.C. Gen. Stat. § 153A-435(a). However, a state agency's purchase of liability insurance "shall not be construed as a waiver of any defense of sovereign

---

[2] As stated above, defendants argue the doctrine of sovereign immunity bars only plaintiff's claims for wrongful termination and blacklisting as to defendant NCSU and its officials in their official capacities. Thus, the court only addresses applicability of this doctrine to these claims.

[3] The State of North Carolina has not waived immunity for intentional tort claims. See Stewart v. North Carolina, 393 F.3d 484, 490 (4th Cir.2005) (citing Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill, 152 N.C.App. 163 (2002)).

5

immunity." N.C. Gen. Stat. § 58-32-15(c). As a result, courts have consistently concluded that sovereign immunity remains a valid defense in tort, notwithstanding the agency's purchase of liability insurance. See Hooper v. North Carolina, et al., 379 F.Supp.2d 804, 812 (M.D.N.C. 2005); Alston v. N.C. A&T State Univ., 304 F.Supp.2d 774, 783 (M.D.N.C. 2004); Wood v. N.C. State Univ., 147 N.C. App. 336, 343 (2001) (holding, as a matter of first impression, purchase of liability insurance does not waive a state entity's sovereign immunity beyond the waiver established in the Tort Claims Act).

Finally, the State's immunity extends equally to claims against State employees in their official capacities. This is because "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citation omitted). "As such, it is no different from a suit against the State itself." Id.

Plaintiff argues she has affirmatively alleged waiver of sovereign immunity by the existence of an employment contract. (See DE 23 at 5). However, plaintiff has not alleged her contract was for a definite period of time. See Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331 (1997) ("North Carolina is an employment-at-will state."). As applicable here, plaintiff has not alleged her claims for wrongful termination and blacklisting are based in contract, and therefore plaintiff has not alleged waiver of sovereign immunity. See Dickinson v. Univ. of N. Carolina, 91 F. Supp. 3d 755, 761 (M.D.N.C. 2015) (citing Smith v. State, 289 N.C. 303 (1976) and White v. Trew, 366 N.C. 360 (2013)) ("It is true that the State is not immune from suit for contracts it enters into. But Dickinson has styled her fifth cause of action in tort, not contract. North Carolina is immune from tort liability, unless it is waived.").

Plaintiff's second claim for wrongful termination, brought against defendant NCSU and defendants Arnett and Casani in their official capacities, (Compl. (DE 1-1) ¶¶ 43-46), is dismissed with prejudice on sovereign immunity grounds. Likewise, plaintiff's sixth claim for blacklisting, brought against defendant NCSU and defendants Arnett and Jane Doe in their official capacities, (id. ¶¶ 79-85), is also dismissed with prejudice on sovereign immunity grounds. Plaintiff's blacklisting claims against defendants Arnett and Jane Doe, in their individual capacities, remain and are addressed below.

    2.            Applicability of Public Officer's Immunity

Under North Carolina law, public officers or officials may not be held liable for negligence "in the performance of their governmental or discretionary duties." Meyer v. Walls, 347 N.C. 97, 112 (1997). Thus, a public officer may be liable in his individual capacity only when he is 1) malicious, 2) corrupt, or 3) acting outside of or beyond the scope of his duties. Id. A public officer "acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial and injurious to another." Grad v. Kaasa, 312 N.C. 310, 313 (1984). An act is "wanton" where "it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id. However, there is a general presumption "that a public official in the performance of his official duties acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." In re Annexation Ordinance No. 300-X, 304 N.C. 549, 551(1981) (internal citation omitted)

Plaintiff has alleged no facts which could plausibly overcome the presumption that the individual defendants acted in good faith and within the scope of their duties. Although plaintiff

7

argues she seeks discovery "to glean facts to support the[se] allegations," (DE 23 at 5), such argument is insufficient. To the extent public officer's immunity applies, plaintiff's claims against defendants in their individual capacities are dismissed without prejudice as barred by public officer's immunity, where deficiencies as to plaintiff's complaint may cured by amendment.[4]

3. Individual Claims

a. Whistleblower Claim

To state a claim under North Carolina's Whistleblower Act, as plaintiff purports to do in her first claim for relief, plaintiff must allege "(1) that [she] engaged in a protected activity, (2) that [NCSU] took adverse action against . . . her employment, and (3) that there is a causal connection between the protected activity and the adverse action taken against [her]." Newberne v. Dep't of Crime Control & Pub. Safety, 359 N.C. 782, 788 (2005) (citing N. C. Gen. Stat. § 126-85(a)).

Here, plaintiff alleges she engaged in protected activity by reporting concerns to Zapata about the software used to track and report student immunization information. (Compl. (DE 1-1) ¶ 30). Even if the court assumes this report constituted protected activity, plaintiff does not allege facts to demonstrate a causal connection between this report and the discontinuation of her employment ten months later. Courts do not infer a causal link unless the adverse action occurred "very close" to, Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001), or "shortly after," Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004), the protected activity. See also Penley v.

---

[4] Defendants argue individual defendants "enjoy public official immunity for each of the claims alleged against them" in their individual capacities, meaning plaintiff's whistleblower, tortious interference, Corum, FLSA, and blacklisting claims. (DE 16 at 8). However, the Fourth Circuit has noted that "the issue of whether public official immunity can apply to intentional tort claims . . . splits courts in North Carolina." Hensley on behalf of N. Carolina v. Price, 876 F.3d 573, 587 n.8 (4th Cir. 2017); see also, e.g., Beck v. City of Durham, 154 N.C.App. 221, 230 (2002) (noting "tortious interference with contract . . . [is an] intentional tort claim"). Because the court finds plaintiff additionally has failed to state a claim as to each of these claims, the court need not to resolve this issue at this time.

8

McDowell Cty. Bd. of Educ., 876 F.3d 646, 656 (4th Cir. 2017) ("Standing alone, knowledge eight to nine months prior is not 'very close.'").

Other than stating defendant Arnett "and others" developed animosity toward her following this report, (Compl. (DE 1-1) ¶ 20), plaintiff does not offer any facts that might support a causal connection. Plaintiff does not offer any detail about her employment during the ten-month gap between her report to Zapata and her separation. (See id. ¶¶ 19-21). Additionally, even though plaintiff alleges that Casani made the decision to separate her from employment, (id. ¶ 14), plaintiff does not plead any fact connecting Casani to her protected activity; for instance, plaintiff does not allege Casani knew about this report or was involved in any way in the software immunization issue.[5]

Plaintiff's whistleblower claim against defendants NCSU and defendants Arnett and Casani, in their individual and official capacities, is dismissed for failure to state a claim.

      b.    Tortious Interference Claim

Plaintiff's third claim, tortious interference with contract claim, has the following elements under North Carolina law:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661 (1988).

Plaintiff alleges that defendants Arnett and Casini, in their individual capacities, tortiously

---

[5] Plaintiff states for the first time in briefing that she properly alleged a causal connection "particularly as Plaintiff received inconsistent reasons for the termination of her employment." (DE 23 at 11). Plaintiff may not amend her pleadings via motion practice.

interfered with plaintiff's employment contract. However, plaintiff has failed to provide any facts in support of these claims. For example, nowhere does plaintiff's allegations indicate that Arnett or Casini intentionally induced another to not perform on a contract or, in doing so, acted without justification. Therefore, plaintiff's claim for tortious interferences is dismissed for failure to state a claim against defendants Arnett and Casani.

        c.      <u>Corum</u> Claim

Applicable to plaintiff's fourth claim, the North Carolina Supreme Court has held that Article I of the North Carolina Constitution provides a direct cause of action to enforce the rights contained therein where there is an "absence of an adequate state remedy." <u>Corum</u>, 330 N.C. at 782. However, a court "must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power." <u>Id.</u> at 784. An adequate state law remedy will exist where there is a cause of action, existing at common law or created by statute, that provides plaintiff with "the possibility of relief" for the same injury alleged in the direct constitutional claim. <u>Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ.</u>, 363 N.C. 334, 340 (2009).

Here, plaintiff attempts to allege a number of claims which, if successful, could provide her with an adequate remedy. <u>See</u> <u>Swain v. Elfland</u>, 145 N.C. App. 383, 391 (2001) (affirming dismissal of whistleblower claim for failure to exhaust administrative remedies and <u>Corum</u> claim where plaintiff "had an adequate state remedy available to him," where plaintiff pursued whistleblower claim).

Accordingly, plaintiff's <u>Corum</u> claim is dismissed with prejudice where deficiencies as to this claim cannot be cured by amendment.

d. Federal Wage and Hour Claim

Plaintiff attempts to bring a federal wage and hour claim as plaintiff's fifth claim; however, plaintiff cannot bring such a claim. The FLSA expressly exempts "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C § 213(a)(1). The regulations confirm "the exemption applies to physicians and other practitioners licensed and practicing in the field of medical science and healing or any of the medical specialties practiced by physicians or practitioners." 29 CFR § 541.304(b). The term "physicians" includes medical doctors including general practitioners and specialists, osteopathic physicians (doctors of osteopathy), podiatrists, dentists (doctors of dental medicine), and optometrists (doctors of optometry or bachelors of science in optometry)." Id.

Here, there is no dispute that plaintiff was employed as a physician at NCSU. (Compl. (DE 1-1) ¶¶ 11, 15-16). As a physician, plaintiff is not entitled to bring a claim under the FLSA, and her claim is dismissed with prejudice.[6]

e. Blacklisting Claim

The court turns to plaintiff's sixth claim for blacklisting as to defendants Arnett and Jane Doe in their individual capacities. The relevant statute provides in full as follows:

> If any person, agent, company or corporation, after having discharged any employee from his or its service, shall prevent or attempt to prevent, by word or writing of any kind, such discharged employee from obtaining employment with any other person, company or corporation, such person, agent or corporation shall be guilty of a Class 3 misdemeanor and shall be punished by a fine not exceeding five hundred dollars ($500.00); and such person, agent, company or corporation shall be liable in penal damages to such discharged person, to be recovered by civil action. This section shall not be construed as prohibiting any person or agent of any company or

---

[6] Plaintiff's argument, that recent federal regulations provide FLSA coverage to some professional employees, is inapposite, where plaintiff cites only generally to the section of the regulations that include the regulation cited above, proving the exemption applies to physicians. See 29 CFR § 541.304(b).

corporation from furnishing in writing, upon request, any other person, company or corporation to whom such discharged person or employee has applied for employment, a truthful statement of the reason for such discharge.

N.C. Gen. Stat.§ 14-355.

Plaintiff alleges that defendant Jane Doe provided an unfavorable reference; however, there is no indication this communication was unsolicited or not "a truthful statement of the reason for such discharge." Id.; see also Bailiff v. Davenport Transp., Inc., No. 3:13-CV-308-GCM, 2013 WL 6229150, at *6 (W.D.N.C. Dec. 2, 2013) ("simply alleging the communication of a 'defamatory statement' is a bare legal conclusion and wholly insufficient to state a claim for blacklisting").[7]

Plaintiff fails to state a claim for blacklisting against defendants Arnett and Jane Doe in their individual capacities.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 15) is GRANTED. Plaintiff's second, fourth, and fifth claims are DISMISSED WITH PREJUDICE. Plaintiff's first and third claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's sixth claim, brought against defendant NCSU and defendants Arnett and Jane Doe, is DISMISSED WITH PREJUDICE, except where this claim is asserted against defendants Arnett and Jane Doe in their individual capacities, which claim is DISMISSED WITHOUT PREJUDICE.

Because the deficiencies in plaintiff's complaint regarding her claims dismissed without prejudice may be curable by amendment, the court grants plaintiff leave to file an amended complaint within 21 days of the date of this order. In the event no amended complaint is timely

---

[7] Additionally, as held by the North Carolina Court of Appeals, the blacklisting statute "authorizes a cause of action for 'penal,' that is, punitive . . . damages only . . . . However, punitive damages may not be recovered against a municipality absent statutory authorization . . . which G.S. § 14–355 fails to provide." Houpe v. City of Statesville, 128 N.C. App. 334, 351(1998) (citations omitted).

12

filed, the clerk is DIRECTED to enter final judgment closing this case, and dismissing the complaint with prejudice, based upon the decision herein.

SO ORDERED, this the 6th day of August, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge